J-S77017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF: A.L.W., a Minor | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.L.W., Father | No. 655 MDA 2016 |

Appeal from the Order entered March 8, 2016, in the
Court of Common Pleas of Mifflin County,
Orphans' Court, at No. 22 of 2015.

| | |
|---|---|
| IN RE: ADOPTION OF: E.M.W., a Minor | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.L.W., Father | No. 656 MDA 2016 |

Appeal from the Order entered March 8, 2016, in the
Court of Common Pleas of Mifflin County,
Orphans' Court, at No. 2015-00021

BEFORE: PANELLA, OLSON, and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 02, 2016**

Appellant, J.L.W. (hereinafter "Father"), appeals from the orders entered on March 8, 2016, denying his petitions to involuntarily terminate the parental rights of C.L.W. (hereinafter "Mother") to their minor children A.L.W. (born in August 2007) and E.M.W. (born in July 2005) (hereinafter, collectively "the Children"). We affirm.

On July 6, 2015, Father filed separate petitions to terminate Mother's parental rights to the Children. Within the petitions, Father claimed that

---

* Retired Senior Judge assigned to the Superior Court.

Mother's parental rights to the Children should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(1) because:

a. . . . Mother has not spent time with [the Children] since May 10, 2014.

b. From November 12, 2011 until May 10, 2014 (a period of 910 days . . . ), Mother saw the [Children] on approximately six [] occasions.

c. The occasions mentioned above on which Mother has seen the [Children] have historically been one to two hour visits at a public park.

d. During the visits[,] Mother and [the Children] interact very little.

e. . . . Mother has had less than eight [] meaningful telephone conversations with [the Children] since October 2013 to the present, a period of approximately [20] months.

f. . . . Mother has had no involvement in the [Children's] educational development. . . .

g. . . . Mother has had no involvement in the [Children's] medical care and treatment for a period in excess of five [] years.

h. Mother has not performed day-to-day parental responsibilities such as getting the [Children] out of bed; ensuring the [Children's] proper hygiene; providing or arranging childcare, transporting the [Children] to [their] community-based[] social events and/or attending the same; establishing a supportive, loving[,] and nurturing emotional bond with the [Children]; etc., for a period in excess of five [] years.

i. For a period in excess of five [] years, Mother has demonstrated only a passive interest at best in the [Children] and has refused and/or failed to undertake an active role and a position of importance in [the Children's lives].

j. Mother's child support order was suspended on June 25, 2013, nearly two years ago, and she has failed to provide financial support for the [Children] since prior to that time. Prior to the suspension of [] the support obligation, Mother's support arrearages were in excess of [$5,000.00].

k. Mother has evidenced a settled purpose of relinquishing her parental claim and has refused and/or failed to perform any meaningful parental duties for the [Children] by conduct continuing for at least six [] months.

Father's Petition to Terminate Mother's Parental Rights to A.L.W., 6/6/15, at 2-4; Father's Petition to Terminate Mother's Parental Rights to E.M.W., 6/6/15, at 2-4.

On December 15, 2015, the trial court held a hearing on Father's petitions. As the trial court explained, during the hearing the parties presented the following evidence:

Father and Mother separated . . . in late 2007 to early 2008 and divorced by official decree [on] March 26, 2009.

Following divorce, Father began seeing [D.W.] in mid-summer 2008 and married [D.W. in] July[] 2011. Following [Father and] Mother's separation, Father maintained a calendar illustrating when Mother exercised her rights to see the [C]hildren. The calendar reflects that, in 2008, Mother visited regularly; in 2009, Mother visited [41] times; in 2010, the visits decreased towards the end of the year (showing one visit in October, in November, and in December); in 2011, four visits; in 2012, two visits; in 2013, three visits; in 2014, one visit; and in 2015, no visits.

[A custody order entered in 2007] required that Mother's visits be supervised in [the home of B.P., the maternal grandmother (hereinafter "Maternal Grandmother")] and [that] the visits [were] to occur once a week for two hours[. This] order changed slightly in 2008 by maintaining

- 3 -

supervision, but no longer limiting Mother's visits to [Maternal Grandmother's] home. . . .

According to Mother's own testimony, the requirement for supervision arose following a Children and Youth [Services (hereinafter "CYS")] investigation that concluded that she could not meet the basic needs of a child. However, Mother testified that [CYS] never removed [the Children] from her care and that she was never charged with child abuse crimes. . . .

In 2014, Father's parents filed a custody action resulting in Mother being required to contact Father if she wished to see or communicate with [the Children]. Initially, [D.W.] did not attend visits, as [Maternal Grandmother] would not let her in her home. However, [D.W.] joined the visitations in the later years and observed Mother taking pictures of [the Children]. Further[,] first-hand observations by Mother's relatives indicate that, at the last visitation in 2014, Mother[] and Mother's other two daughters interacted positively with [the Children and] that Mother was warm, loving, and interactive.

[Father also] maintained records reflecting that, in the six months prior to filing the July 6, 2015 petitions to terminate Mother's parental rights, Mother had not called [or] left a voicemail with Father[;] however, Father's records from Verizon ended [in March 2015]. Notwithstanding his phone records, Father testified that Mother texts, stating that she loves and misses the [C]hildren and asks that they call her. Father supplemented this by stating that, in the six months prior to the filing of the petitions, Mother texted him, inquiring about the [C]hildren, once per week. Further, [K.L.] (Mother's sister) [(hereinafter "Mother's Sister")], who receives Mother's cell phone bill, verified that Mother contacts Father via text many times and that her records show that Father sometimes fails to respond to the text messages.

Father testified that Mother and her family historically buy Christmas gifts for [the Children]. [Mother's Sister] further testified that Mother and her family bought Christmas presents for [the Children from 2011 through 2015], and that these gifts were given to [B.H.] ([the C]hildren's great-

grandmother), to give to Father. Mother corroborated this by stating that she buys the [C]hildren Christmas gifts and has sent cards. Further, Mother testified that she tried to arrange a visit with [the Children] in Christmas of 2014, but that Father refused and would only meet with Mother's grandmother.

In addition to trying to organize a visit over Christmas in 2014, Mother testified that she tried to schedule a visit for Mother's Day [in] 2015 [with the Children], but Father refused. And while Mother acknowledged that, in the past, Father tried to provide suitable accommodations for visits if he could not coordinate with the times Mother wanted, over the past six months[] Father would propose times that were inappropriate for [the Children,] who are in school all day. For example, Mother testified that Father would propose that her visits with the [C]hildren occur from 6:00 [to] 8:00 p.m. during the week and that Mother believed that the [C]hildren should be "unwinding" during that time, eating dinner, and bathing. Mother testified that she wanted weekend visits so as not to interfere with the [C]hildren's schooling.

Father testified that Mother never requested a change in custody and that Mother had ample opportunity to do so when Father's parents petitioned the court for custody. Father testified that, notwithstanding Mother attending two proceedings relating to the 2014 custody case, that Mother never met with the [C]hildren's guardian *ad litem* [(hereinafter "GAL")], Stuart Cilo, nor did she actively participate in the proceedings[. I]n contrast, Father, Father's parents, and [D.W] all met with the [C]hildren's GAL. . . .

In response, Mother testified that she did not meet with [the GAL], that he did call her, and that she returned the call, left a message with his secretary, and never received a return call. Mother further testified that she did not relay her concerns about not being able to see the [C]hildren to [the GAL] because she perceived it to be irrelevant to the custody case at issue. In addition, Mother testified that she tried to alter the custody visits by, first, contacting the [C]hildren's original GAL, Nancy Searer and[,] two, when Ms. Searer informed Mother that she was no longer involved

in the case, Mother tried to contact an attorney, but could not afford one. Mother testified that she was unaware that she could proceed without an attorney.

Trial Court Opinion, 3/8/16, at 1-5 (internal citations omitted) (some internal capitalization omitted).

On March 8, 2016, the trial court entered orders denying Father's petitions to terminate Mother's parental rights. Father filed timely notices of appeal and now raises the following claims to this Court:

> 1. Were the trial court's findings regarding Mother's attempts to maintain a relationship and bond with the [C]hildren and attempts to meet the emotional needs of the [C]hildren supported by competent evidence of record such that termination of parental rights is not warranted?
>
> 2. Did the trial court abuse its discretion by concluding that Mother adequately fulfilled her parental duties given the lack of contact between Mother and the [C]hildren, Mother's failure to use any resources to address Father's alleged obstruction of her visits, and Mother's mere passive interest in the [C]hildren's development?
>
> 3. Did the trial court commit an error of law in excusing Mother's failure to pursue legal relief based on her allegations that she did not realize she could participate while attending custody proceedings involving [the C]hildren, Father, and paternal grandparents?
>
> 4. Did the trial court, in considering the [C]hildren's developmental, physical and emotional needs and welfare, commit an abuse of discretion in finding that Mother had an emotional bond with the [C]hildren and that the parental relationship was "existing, necessary, and beneficial?"

Father's Brief at 4-5.[1]

---

[1] For ease of discussion, we have re-ordered Father's claims on appeal.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As [the Pennsylvania Supreme Court] discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. [The Supreme Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.*, *quoting* *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

In the case at bar, Father petitioned to terminate Mother's parental rights under 23 Pa.C.S.A. §§ 2511(a)(1) and (b). These sections provide:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which

are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

We have explained this Court's review of a challenge to the sufficiency of the evidence supporting the involuntary termination of a parent's rights pursuant to section 2511(a)(1) as follows:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.
>
> . . .
>
> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

> [T]o be legally significant, the [post-abandonment] contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship and must also demonstrate a willingness and capacity to undertake the parental role. The parent wishing to reestablish his parental responsibilities bears the burden of proof on this question.

- 9 -

*In re Z.P.*, 994 A.2d 1108, 1119 (Pa. Super. 2010) (internal citation omitted); *see also In re Adoption of C.L.G.*, 956 A.2d 999, 1006 (Pa. Super 2008) (*en banc*).

Further, regarding the definition of "parental duties," this Court has stated as follows:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004).

Within the trial court's opinion to this Court, the trial court ably explained why it concluded that Father "did not, by clear and convincing evidence, establish the termination ground found in § 2511(a)(1) relative to Mother." Trial Court Opinion, 3/8/16, at 6. As the trial court explained:

> Under the totality of the circumstances, [the trial court] does not find sufficient evidence proving either a "settled purpose of relinquishing parental claim" or a "refus[al] or fail[ure] to perform parental duties" on behalf of Mother. The [trial] court finds that Mother did attempt to coordinate visits with [the Children] on both Christmas 2014 and Mother's Day 2015, and while Father provided phone records reflecting Mother's failure to consistently call, Father's records end in March of 2015, not July of 2015. Further, even if phone records illustrate that Mother failed to call in the six months prior to the filing, [the trial] court finds that Mother texted Father about the [C]hildren to convey loving messages. Mother and her family also buy Christmas gifts for the [C]hildren and appear to have continued that tradition since Mother and Father separated.
> . . .
>
> Parental duties "encompass[] more than financial obligation; [they] require[] continuing interest in the child and a genuine effort to maintain communication and association with the child. *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003). . . . [The trial] court finds that Mother satisfied this test. And while Mother did not file a petition to modify the current custody arraignment, [the trial] court is satisfied that Mother truly believed that her visitation concerns were inappropriate to raise at the 2008 custody hearing and that she believed that she needed an attorney to alter the arraignment.

Trial Court Opinion, 3/8/16, at 6-7 (some internal capitalization omitted).

Further, with respect to section 2511(b), the trial court concluded that terminating Mother's parental rights would not serve the Children's best interests. According to the trial court:

Having found that Father failed to establish, by clear and convincing evidence, the termination ground stated in § 2511(a)(1), [the trial] court further concludes that terminating Mother's parental rights would not serve the [C]hildren's best interests. [The trial] court must give "primary determination" to the [C]hildren's "developmental, physical, and emotional needs" and must examine "intangibles such as love, comfort, security, and stability". . . . Of critical concern are the [C]hildren's needs and welfare. . . .

Here, [the trial] court looked at the emotional bond between Mother and [the Children] . . . [and concluded] that severing the parental ties "would destroy an existing, necessary and beneficial relationship." *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). Mother and her extended family demonstrably try to maintain a relationship with [the Children] despite not having had a scheduled visit since 2014. Mother texts Father to convey loving messages to [the Children], tried to arrange visits, sends Christmas gifts in care of the [C]hildren's great-grandmother, and when visits were organized, Mother and all four of her children positively interacted. Testimony also indicates that Mother wished to see [the C]hildren on holidays as recent as Mother's Day 2015. Based upon Mother's efforts to maintain a relationship with [the C]hildren, [the trial] court finds that severing the tie between them would not serve the best interests of the [C]hildren.

Trial Court Opinion, 3/8/16, at 7-8 (some internal capitalization omitted).

Within the "statement of questions involved" section of Father's brief, Father lists four separate claims of relief. *See* Father's Brief at 4-5. However, the argument section of Father's brief is not divided into separate parts. *See* Father's Brief at 11-24. In fact, within the argument section of Father's brief, Father simply argues that the trial court should have viewed his evidence more favorably, viewed Mother's action and inaction towards

the Children more unfavorably, and mistakenly "overlooked" certain evidence that Father put forth. **See id.** In other words, Father's claim on appeal is simply a challenge to the weight of the evidence. Yet, as our Supreme Court has explained:

> appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

**In re Adoption of S.P.**, 47 A.3d at 826-27 (internal citations omitted).

In the case at bar, all of the trial court's factual findings are supported by the record; and, since Father's claim on appeal is simply a request that this Court reweigh the evidence in his favor and arrive at different credibility determinations than did the trial court, we conclude that Father's claim on appeal necessarily fails. **Id.**

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/2/2016</u>